IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

KATHLEEN DAVIS, on behalf of
NATALIE MAITLAND (Deceased),

                    Plaintiff,

                                        Civ. Action No.
        v.                              6:11-CV-0658 (MAD/DEP)

CAROLYN W. COLVIN, Commissioner
of Social Security,[1]

                    Defendant.

_____

APPEARANCES:                            OF COUNSEL:

FOR PLAINTIFF:

OLINSKY LAW GROUP                       HOWARD D. OLINSKY, ESQ.
300 S. State Street, Ste. 520
Syracuse, NY 13202

FOR DEFENDANT:

HON. RICHARD S. HARTUNIAN               JASON P. PECK, ESQ.
United States Attorney, N.D.N.Y.        Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

_____

        [1]     Plaintiff's complaint named Michael J. Astrue, as the Commissioner of
Social Security, as the defendant.  On February 14, 2013, Carolyn W. Colvin took
office as Acting Social Security Commissioner.  She has therefore been substituted as
the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of
Civil Procedure, and no further action is required in order to effectuate this change.
*See* 42 U.S.C. § 405(g).

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

In November 2005, claimant Natalie Maitland ("claimant") filed

applications for disability insurance benefits ("DIB") and supplemental

security income ("SSI") under the Social Security Act ("Act"), alleging that

she was unable to work and thus disabled within the meaning of the Act

as a result of limitations caused by depression, anxiety, obsessive-

compulsive disorder ("OCD"), post-traumatic stress disorder ("PTSD"),

and high blood pressure, and asserting a disability onset date of July 15,

2005. Claimant's applications were denied, both initially and following a

hearing conducted by an administrative law judge ("ALJ") based upon his

*de novo* review of available medical evidence, testimony given by the

claimant, and the results of an examination by an impartial psychologist

retained by the agency.

Kathleen Davis, acting on behalf of the claimant, her daughter, who

is now deceased, has commenced this action seeking judicial review of

the Commissioner's denial of claimant's application for DIB and SSI

benefits, pursuant to 42 U.S.C. § 405(g). In support of that request,

plaintiff argues that the ALJ's decision fails to take into account the limiting

2

effects of the conditions experienced in both of the claimant's knees, and was based upon a flawed and unsupported residual functioning capacity ("RFC") finding. Plaintiff further asserts that the ALJ failed to properly evaluate the claimant's subjective claims regarding the disabling limitations associated with her mental condition, and that the ALJ's determination at step four, regarding her capacity to perform her past relevant work, is unsupported.

For the reasons set forth below, while I recommend rejection of plaintiff's arguments concerning her knee conditions, I nonetheless recommend a finding that the ALJ did not make a proper analysis of plaintiff's subjective claims, which were considerably amplified during her hearing testimony, and therefore recommend that the Commissioner's determination be vacated and the matter be remanded for further consideration by the agency.

I.      BACKGROUND

Claimant was born in May 1971; at the time of the hearing in this matter she was thirty-seven years of age. Administrative Transcript at 86, 98, 428.[2] Claimant attended high school only through the tenth grade,

---

[2]      Portions of the administrative transcript (Dkt. No. 8), which was compiled by the Commissioner and is comprised in large part of the medical records and other

and did not receive either a high school diploma or an equivalent GED. AT 428. At the time of her hearing, claimant was not married, and lived in Rome, New York. AT 86, 88. Claimant had five children, although all but the oldest were removed from the home and placed elsewhere in light of her medical condition and the exacerbation of that condition caused by having custody of all five. AT 259, 263, 346, 434.

The claimant did not work between July 15, 2005, and the time of her death. AT 428. During the administrative hearing, she testified that her last employment was as a part-time housekeeper at a local hotel.[3] AT 429. Claimant was laid off from that position because she was having difficulty in meeting the physical and mental demands of the job.[4] AT 430-31. Prior to that job, she worked as a nurses' assistant at Rome Memorial Hospital, located in Rome, New York. AT 102, 429-30. Claimant's other previous employment included working as a cashier, and as a dietary aid.

---

evidence that was before the agency when its decision was made, will be cited hereinafter as "AT ___."

[3]     The information given by the claimant during the hearing is in conflict with her disability report, which reflects that she worked as a housekeeper in 2001, and as a nursing assistant at a local hospital from December 2002 until July 2005. *See* AT 102.

[4]     During her disability interview, claimant stated that she was fired in July 2005 for missing work "due to child care problems." AT 102.

AT 102.

During her adult lifetime, claimant underwent periodic treatment for both mental and physical conditions dating back well before her alleged onset date of July 15, 2005. The physical conditions for which she was treated included a thyroidal abnormality, sleep apnea, a left ankle injury suffered while falling, and more recently, degenerative arthritis of the right knee, post arthroscopic left knee surgery secondary to significant knee pain, and Type II Diabetes. AT 197-99, 209-10, 222, 262-65, 335-36, 446-48. Claimant's more pressing concerns, however, centered upon a mental condition that was variously diagnosed but generally regarded as representing an anxiety disorder not otherwise specified ("NOS").

Claimant was evaluated by Dr. Lawrence Farago, an affiliate of Mental Health Connections-Utica, in July of 2002, and was diagnosed as suffering from that disorder, as well as a mood disorder, NOS, and alcohol abuse, and assigned a global assessment of functioning ("GAF") score of sixty-five.[5] AT 231-33. At that time she was prescribed Paxil for her

---

[5] GAF is described as a "clinician's judgment of the individual's overall level of functioning." Diagnostic and Statistical Mental Disorders 32 (4th ed., Text Revision 2000) ("DSM-IV-TR"). A person with a GAF score of sixty-five experiences some mild symptoms, such as depressed mood, or some difficulty in social, occupational, or school functioning, but generally functions "pretty well" and has some meaningful interpersonal relationships. *Id.* 34.

anxiety.  *Id.*  In a report of his examination, Dr. Farago noted the following:

> Ms. Maitland is a 31-year-old single female with a
> long history of tumultuous relationships, a history of
> perhaps some self harming behavior in late
> adolescence and early adulthood, however, none for
> at least the past 11-13 years.  There are some vague
> symptoms consistent with anxiety and depression,
> however, no history of frank major depression and no
> symptoms consistent with mania, no symptoms
> consistent with psychosis or other disorders.  There
> is the potential for PTSD, however, many of the
> symptoms appear to be exaggerated and when
> questioned in detail are very vague or she changes
> the subject.  She is also very ambivalent in her
> psychiatric treatment.  She has been in sporadic care
> over the last 6 or 7 years, and has only been partially
> compliant with medications, if not non-compliant.
> This is related to her ambivalence and need for care
> in that she puts it I only come 'when I am in crisis.'

AT 232.  Claimant continued to receive  treatment at Medical Health

Connections sporadically between 2002 and January 2006, generally

complaining of ongoing anxiety and depression.  AT 222-33.

On April 4, 2006, claimant was consultatively examined by Dr.

Berton Shayevitz, who performed a physical examination, and by Dr.

Dennis M. Noia, a licenced psychologist.  AT 258.  Based upon his

examination, Dr. Noia noted that claimant demonstrated an appropriate

appearance and speech, with coherent and goal directed thought

_____

processes and no evidence of delusions, hallucinations or disordered

thinking; a calm mood with congruent affect; clear sensorium; and

orientation x3 – all observations that are fairly consistent with reports of

her treatment at Mental Health Connections.  AT 258-61.  During the

physical examination, claimant reported to Dr. Shayevitz that she had

asthma and was unable to run and was required to stop at the top of the

flight of stairs or after walking a block.[6]  AT 262.  Plaintiff reported to Dr.

Shayevitz that she took Albuterol by inhalation once or twice per week.

AT 263.  Notes of the examination reveal that claimant appeared to be in

no acute distress, her gait was normal, and she was able to walk without

difficulty and able to fully squat.  *Id.*  A musculoskeletal examination

revealed that she retained full flexion extension and movement, with

negative straight leg raising bilaterally and a full range of motion of

shoulders, elbows, forearms, and wrists bilaterally.  AT 264.  Dr. Shayavitz

diagnosed plaintiff as suffering from degenerative arthritis in the right

knee, chronic obstructive pulmonary disease ("COPD") with some bronco

---

[6]        That report is inconsistent with plaintiff's testimony at the hearing, during which she stated that she is able to walk up to eight or nine blocks before needing to rest.  *See* AT 446.

spasm secondary to smoking, and hypertension.[7] AT 265. Based upon that examination, Dr. Shayevitz concluded that the claimant experienced minimal to moderate limitations due to intermittent bouts of bronchospasm, and minimal limitations by virtue of her high blood pressure. *Id.*

On May 19, 2006, claimant was seen by Susan Hauptfleisch, a nurse practitioner ("NP") also affiliated with Mental Health Connections. AT 298-99. During that visit, claimant reported that her Paxil supply had been exhausted three months previously, and she was dismissed from the practice of her primary care provider based upon a missed appointment. AT 298. NP Hauptfleisch diagnosed claimant as suffering from major depressive disorder, concurrent, moderate without psychotic features; cocaine abuse; acute stress disorder; ruled out PTSD; and assigned a GAF score of 50. *Id.* NP Hauptfleisch also prescribed Remeron for claimant's depression, anxiety, and sleep disorder, and urged her to maintain appointments with her primary therapist, Nancy Phillips. *Id.*

Claimant continued her mental health treatment through Community

---

[7]     During the examination by Dr. Shayevitz, claimant acknowledged that she once smoked up to a pack of cigarettes per day, although stated that she had cut back to one-half of a pack daily. AT 263.

Health and Behavioral Services, located in Rome, New York, from October 2006, through April 10, 2007, treating principally with NP Timothy Jones. AT 301-13. During that time, she was diagnosed with a major depressive disorder, recurrent with some psychotic features, and on at least two occasions assigned a GAF score of 60. AT 301, 305.

Claimant was seen in the St. Elizabeth Medical Center emergency department on August 14, 2007, where she presented for a voluntary psychiatric crisis evaluation. AT 315-21. At that time, she was diagnosed with depression, based upon symptoms that included loss of weight, anhedonia, difficulty falling asleep, and diabetes, and was prescribed Effexor and advised to contact her primary care physician for a follow-up.[8] *Id.*

Claimant continued her mental health treatment with Dr. Florica Ochotorena, a psychiatrist, as well as a social worker in Dr. Ochotorena's office, Clinton Norwood, Jr., LMSW, beginning in June of 2007 and continuing for a year. AT 365-71. Throughout the course of that treatment, claimant was generally diagnosed as suffering from a major depressive disorder, and was treated with various medications including

---

[8]     It appears the emergency room visit was precipitated by the removal of her children from her home by Social Services. *See* AT 316.

Zoloft, Effexor, and Trazodone. *Id.*

On June 23, 2008, LMSW Norwood completed a mental impairment medical source statement, in which he noted that claimant was nervous and frequently had panic attacks, experienced excessive shaking and muscle spasms, and at times had difficulty talking and writing. AT 372-77. Addressing specific work-related factors, LMSW Norwood noted that the claimant's mental condition would cause her to be seriously limited, but not precluded, in the performance of unskilled work, including in the areas of remembering work-like procedures; maintaining attention for two hour segments; maintaining regular attendance and being punctual within customary, usually strict tolerances; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; dealing with normal work stress; and being aware of normal hazards and taking appropriate precautions.[9] AT 374.

---

[9] The ALJ wrote to Dr. Ochotorena on September 17, 2008, requesting that she sign the mental source statement prepared by LMSW Norwood. AT 378.

During the administrative hearing in this matter, claimant described her daily activities. She noted that her children had been placed elsewhere based upon her inability to cope with their issues and becoming "too overwhelmed." AT 434. Claimant testified that she was unable to sleep at night, but slept much of the day. AT 434-35, 461-62. She did not go outside, and very often did not answer the door or telephone unless it was one of her children making contact. AT 435-38. Claimant cooked very little, and opened her mail only once each week. AT 439.

During her last hearing session, claimant testified that she began working in February of 2009, in a part-time position two days per week for a total of ten hours. AT 462-64. In that position, claimant answered the telephone and the door, but worked only around her boss, her stepfather's current wife, and no other coworkers. *Id.* Plaintiff testified that she had difficulty working around other people. AT 463.

_____

There is no indication in the record that Dr. Ochotorena honored this request.

III.   PROCEDURAL HISTORY

A.   Proceedings Before the Agency

Claimant protectively filed an application for DIB, as well as a separate application for SSI, both on November 3, 2005, alleging a disability onset date of July 15, 2005.  AT 86-90.  Following initial denials of those applications, a hearing was conducted at claimant's request before ALJ John M. Lischak, beginning on June 20, 2008, and continuing to June 22, 2009, and further on July 10, 2009.[10]  AT 419-97.  In addition, interrogatories were propounded by ALJ Lischak to Dr. Aaron Satloff, a non-examining medical source expert, and George Parsons, a vocational expert, both of whom gave testimony during the hearing in this matter.[11]  AT 55-56, 379-86.  Following the hearing, ALJ Lischak issued a written decision, dated August 21, 2009.  AT 22-29.  In his decision, ALJ Lischak

---

[10]   An earlier hearing was convened on March 19, 2008, before ALJ Elizabeth W. Koenneck, but was adjourned in order to permit claimant to secure legal representation.  AT 406-18.

[11]   An ALJ is authorized to use interrogatories. *See* HALLEX I-2-5-40 (S.S.A) (stating that an ALJ may determine whether to receive additional comments from a medical expert or examiner via interrogatories after a hearing). *Cf. Townley v. Heckler*, 748 F.2d 109, 111 (2d Cir. 1984) (acknowledging that the ALJ sent interrogatories to expert after hearing); *Varela v. Sec'y of Health and Human Servs.*, 711 F.2d 482, 484 (2d Cir. 1983) (acknowledging the ALJ's request for additional information from a medical source via interrogatory after a hearing); *Snyder v. Barnhart*, 212 F. Supp. 172, 175 (W.D.N.Y. 2002) (acknowledging that the ALJ sent interrogatories to a medical professional following the hearing).

conducted a *de novo* review of the available evidence, applying the now

familiar five-step test for determining disability.  *Id.*   After concluding at

step one that the claimant had not engaged in substantial gainful activity

since her alleged onset date, he determined that she suffered from two

severe impairments, including asthma and affective disorder.  AT 24.  The

ALJ concluded, at step three, however, that neither of those conditions

met or medically equaled any of the listed, presumptively disabling,

impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1.[12]  AT 26.

Before proceeding to step four of the analysis, ALJ Lischak

surveyed the available medical evidence and concluded that despite her

conditions, claimant retained the RFC to perform light work, as defined in

the regulations, except

> [p]erhaps for unusually strenuous work which might
> exacerbate her asthma, or work around unprotected
> heights or ladders/ropes/scaffolds, and with mentally
> remaining capacity to understand and follow simple
> instructions and directions; perform simple and some
> complex tasks with supervision and independently;
> maintain attention/concentration for tasks; regularly
> attend to a routine and maintain a schedule; learn
> new tasks; make appropriate decisions; and relate to
> and interact appropriately with others, though with
> some possible trouble dealing with high levels of

---

[12]     In her challenge of the Commissioner's determination, plaintiff does not
find fault with this portion of the ALJ's decision.

work-related stress.

AT 26-27.[13]  In arriving at his RFC determination, the ALJ concluded that claimant's descriptions of her symptomology were consistent with objective medical evidence in the record, but found her statements concerning their limiting affects to be not fully credible to the extent they were inconsistent with his RFC finding.  AT 27-28.

At step four of the analysis, relying upon the interrogatory responses and hearing testimony of vocational expert George Parsons, the ALJ concluded that claimant was capable of performing her past relevant work as a dietary aide, housekeeper, or nursing assistant.  AT 28.  Despite making this finding, the ALJ concluded, at step five, that other jobs existed

---

[13]     By regulation light work is defined as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

in the national and local economy that claimant was capable of performing notwithstanding her limitations, relying both upon the testimony of a vocational expert and use of the medical vocational guidelines ("grids"), contained within 20 C.F.R. Pt. 404, Subpt. P, App. 2. AT 28-30. ALJ Lischak thus concluded that claimant was not disabled at any relevant time within the meaning of the Act, and therefore was not entitled to DIB and SSI benefits. AT 29.

The ALJ's opinion became a final determination of the agency on April 24, 2011, when the Social Security Administration Appeals Council denied claimant's request for review of that decision. AT 11-13.

B.    This Action

Plaintiff Kathleen Davis, acting on behalf of the deceased claimant, Natalie Maitland, commenced this action on June 13, 2011.[14] Dkt. No. 1. Issue was thereafter joined on December 27, 2011, by the filing of an answer on behalf of the Commissioner, followed a day later by submission of an administrative transcript of evidence and proceedings before the

---

[14]    It appears from the complaint in this action that, subsequent to the last administrative hearing date, claimant died. There is no information contained in the record, however, concerning the circumstances surrounding her death, including when it occurred. The Commissioner does not challenge the authority of plaintiff, the claimant's mother, to bring this action.

agency in connection with the matter.  Dkt. Nos. 7, 8.  With the

submission of plaintiff's brief on February 10, 2012, Dkt. No. 9, and the

Commissioner's brief on May 2, 2012, Dkt. No. 14, the matter is now ripe

for determination and has been referred to me for the issuance of a report

and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern

District of New York Local Rule 72.3(d).  *See* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

    A.    Scope of Review

    A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater,* 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel,* 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F. Supp.

2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*, 817

F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to

whether the Commissioner applied the proper legal standards, his

decision should not be affirmed even though the ultimate conclusion

reached is arguably supported by substantial evidence.  *Martone*, 70 F.

16

Supp. 2d at 148 (citing *Johnson*, 817 F.2d at 986). If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel,* 13 F. Supp. 2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003). To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record. *Richardson*, 402 U.S. at 401, 91 S. Ct. at 1427 (quoting *Consolidated Edison Co.*, 308 U.S. at 229, 59 S. Ct. 219); *Martone,* 70 F. Supp. 2d at 148 (quoting *Richardson*). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court

considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp. 2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp. 2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter

for further proceedings before the agency.  *See Parker*, 626 F.2d at 235;

*see also Simmons v. United States R.R. Ret. Bd.,* 982 F.2d 49, 57 (2d Cir.

1992); *Carroll v. Sec'y of Health and Human Servs*., 705 F.2d 638, 644

(2d Cir. 1983).

     B.    Disability Determination: The Five Step Evaluation Process

     The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [must
> be] of such severity that he is not only unable to do
> his previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

*Id.* at § 423(d)(2)(A).

     The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

19

§§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaging in substantial gainful activity; if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* at §§ 404.1520(b), 416.920(b).  If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* at §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id. at* §§ 404.1520(d), 416.920(d), Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Id.* at §§ 404.1520(d), 416.920(d); *see also Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter, the agency must examine whether the claimant can do any other work.  *Id.* at §§

404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant. *Burgess v. Astrue*, 537 F.3d 117, 118 (2d Cir. 2008); *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584. Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work. *Burgess*, 77 F.3d at 118; *Perez*, 77 F.3d at 46. In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills. *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    The Evidence in this Case

In support of her challenge to the ALJ's determination, plaintiff argues that (1) the ALJ improperly rejected claimant's right knee arthritic condition and left knee pain as severe at step two of the disability protocol; (2) his RFC determination is not supported by substantial evidence, including the medical source statement of LMSW Norwood – which the ALJ mistakenly attributed to claimant's treating physician, Dr. Ochotorena; (3) the ALJ improperly evaluated claimant's credibility, and in doing so, failed to consider the relevant factors informing that analysis;

and (4) the ALJ's step four determination is flawed in that it included two positions – those of dietary aide and housekeeper – that were not past relevant work, or alternatively, should be viewed, at best, as unsuccessful work attempts.

1.    Step Two Determination

In his decision, ALJ Lischak addressed only claimant's asthma and mental health condition, and did not discuss either her knee conditions or, for that matter, the claim that she suffered from high blood pressure.  The governing regulations provide that

> [a]n impairment or combination of impairments is not severe if it does not significantly limit a [claimant's] physical or mental ability to do basic work activities.

20 C.F.R. § 404.1521(a).  That section also describes what is meant by the phrase "basic work activities," which include "the abilities and aptitudes necessary to do most jobs."  *Id.* at § 404.1521(b).  The second step requirement under the prescribed disability analysis is truly *de minimis*, and intended only to screen out the truly weakest of cases. *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995), *accord*, *Baneky v. Apfel,* 997 F. Supp. 543, 545-46 (S.D.N.Y. 1998).  At step two, the claimant bears the burden to provide medical evidence demonstrating the

severity of her condition.  20 C.F.R. § 404.1512(a); *Bowen v. Yuckert*,
482 U.S. 137, 146 (1987); *see also Desmond v. Astrue,* No. 11-CV-0818,
2012 WL 6648625, *3 (N.D.N.Y. Dec. 20, 2012) (Bianchini, M.J.) (*citing
Miller v. Comm'r of Soc. Sec.*, No. 05-CV-1371, 2008 WL 2783418, *6-7
(N.D.N.Y. July 2008) (Scullin, J.)).

The record in this case fails to support plaintiff's argument that
claimant's knee conditions were limiting to the extent necessary to
support a step-two finding of severity.  Claimant underwent arthroscopic
knee surgery on August 24, 2006, to address the pain in her left knee.
AT 335.  There is no indication in the record, however, that she suffered
any significant residual affects of that condition following surgery.

Claimant also has a well-documented arthritic condition in her right
knee.  In April 2006, however, when asked about that condition, she
stated that she only takes Celebrex for her knee when the weather
changes, indicating that she did not consider the condition to be disabling
or that she did not have had difficulty walking.  AT 108.  During the
hearing, claimant testified that she could walk eight or nine blocks without
resting, and could lift, walk and stand, and indicated that her physical
problems did not preclude her from working.  AT 446-48.  In a report of

23

the physical examination conducted in April of 2007 by Dr. Shayevitz, it is noted that claimant was able to ambulate without difficulty and did not appear to be in acute distress. AT 263-65. While Dr. Shayevitz did note the presence of degenerative arthritis in the right knee as an impression, there was no indication of any limitation on the ability to perform work related functions associated with that condition. *Id*.; *see also* AT 365 (Dr. Ochotorena indicating that claimant ambulates well).

Based upon the foregoing, I recommend a finding that ALJ Lischak did not err at step two in failing to consider plaintiff's knee conditions when determining whether plaintiff's impairments meet the applicable severity requirements.

### 2. The ALJ's RFC Finding

The primary focus of the plaintiff's challenge in this matter is to the ALJ's RFC determination. A claimant's RFC represents a finding of the range of tasks she is capable of performing notwithstanding the impairments at issue. 20 C.F.R. § 404.1545(a). An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis. *Id.*;

24

*Martone*, 70 F. Supp. 2d at 150.

To properly ascertain a claimant's RFC, an ALJ must assess plaintiff's exertional capabilities, including her ability to sit, stand, walk, lift, carry, push and pull. 20 C.F.R. §§ 404.1545(b), 404.1569a. Nonexertional limitations or impairments, including impairments which result in postural and manipulative limitations, must also be considered. 20 C.F.R. §§ 404.1545(b), 404.1569a; 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions that the claimant is capable of performing; conclusory statements concerning her capabilities, however, will not suffice. *Martone*, 70 F. Supp. 2d at 150. An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the regulations. *Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990) (McAvoy, J.)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

In arriving at his RFC determination, the ALJ acknowledged the medical source statement, which he attributed to Dr. Ochotorena, that indicated that claimant's mental condition posed serious limitations in

several categories, and referred to that statement as an "anomaly."  *See*

AT 28.  It is ironic that the ALJ referred to the report, which was actually

authored by LMSW Norwood, and not signed by Dr. Ochotorena despite

a request, as a statement from a treating source because, ordinarily, the

opinion of a treating physician regarding the nature and severity of an

impairment is entitled to considerable deference, provided that it is

supported by medically acceptable clinical and laboratory diagnostic

techniques and is not inconsistent with other substantial evidence.  *Veino*,

312 F.3d at 588; *Barnett*, 13 F. Supp. 2d at 316.[15]

Although the medical source statement is not from a treating

physician, but instead a clinical social worker, this fact does not render it

meaningless.  While only acceptable medical sources can be considered

treating sources whose opinions may be entitled to controlling weight,

---

[15]     The regulation that governs treating physicians provides as follows:

> Generally, we give more weight to opinions from your treating
> sources . . . . If we find that a treating source's opinion on the
> issue(s) of the nature and severity of your impairment(s) is
> well-supported by medically acceptable clinical and laboratory
> diagnostic techniques and is not inconsistent with the other
> substantial evidence in your case record, we will give it
> controlling weight.  When we do not give the treating source's
> opinion controlling weight, we apply [various factors] in
> determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

other sources, including license clinical social workers, may provide highly relevant evidence bearing upon the severity of an individual's impairments and how it may affect an individual's ability to function. Social Security Ruling ("SSR") 06-03P, 2006 WL 2329939 (S.S.A. Aug. 9, 2006); *see also Swanson v. Astrue*, No. 10-CV-217, 2011 WL 2582617, at * 7 (D. Vt. June 29, 2011).  When determining the weight, if any, to be given to opinions from such other sources, an ALJ should consider the same factors that inform the decision of what weight to accord to treating source opinions, including (1) the frequency of which the relationship with which the source has seen the individual; (2) the consistency of the opinion with other evidence in the record; (3) the degree to which the source supports his or her opinions; (4) how well the source explains the opinion; (5) whether the source has a speciality or area of expertise related to the impairment; and (6) any other factors tending to support or refute the opinion.  *Burgess*, 537 F.3d at 129; SSR 06-03P.

In this instance, as the ALJ apparently acknowledged, the medical source statement prepared by LMSW Norwood is, for the most part, inconsistent with his RFC finding.  While the ALJ acknowledged claimant's serious limitations in many areas, he stated, without

explanation, "that simple, basic work activities would not be precluded or impacted in such a way as to invalidate the ultimate conclusions reaching this decision." AT 28. In reaching that conclusion, the ALJ did not indicate whether he was rejecting the opinions of LMSW Norwood, nor did he state what weight he afforded to any of the opinions provided. This failure necessitates reversal and a remand to the agency for further clarification. *Swanson*, 2011 WL 2582617, at *7. When the matter is again considered by the agency, a more full explanation should be given as to what portions, if any, of LMSW Norwood's opinions have been rejected; if none, then clarification should be offered as to how the claimant retains the ability to perform work-related functions notwithstanding the serious limitations noted in the ALJ's decision.

Also pivotal to the ALJ's RFC finding was his rejection of claimant's subjective testimony regarding her limitations. During the hearing, claimant testified to the effects of her depression, including her inability to work with others, daily difficulty in getting out of bed, her failure to bathe and comb her hair, and that she did not go outside and only occasionally cooked. AT 461-62, 434-39, 461-63. In his decision, the ALJ noted that claimant was unable to keep pace and focus mentally, experienced

28

memory difficulties attributed to her anxiety and depression, had trouble sleeping, and occasionally became sweaty and dizzy during the day.  AT 27.  He concluded, however, without any meaningful discussion, that, while claimant's medically determinable impairments could reasonably be expected to cause some of these alleged symptoms, her statements were not credible to the extent inconsistent with the ALJ's RFC finding.  AT 27-28.  This conclusory statement, without explanation, fails to comport with the regulations and the analysis that they require.

When engaging in the five-step disability analysis, an ALJ must take into account subjective claims regarding a complainant's limitations.  20 C.F.R. §§ 404.1529(a)(d), 416.929(a)(d).  Of course, an ALJ is not required to blindly accept the subjective testimony of a claimant.  *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979), *accord*, *Martone*, 70 F. Supp. 2d at 151.  Rather, an ALJ retains the discretion to evaluate a claimant's subjective testimony, including testimony concerning pain and other limitations*. Mimms v. Heckler,* 750 F.2d 180, 185-86 (2d Cir. 1984).  In exercising that discretion, the ALJ must consider a variety of factors including the claimant's "credibility and motivation, as well as the medical evidence of impairment[.]"  *Sweatman v. Callahan*, No. 96-CV-1966, 1998

WL 59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, J., *adopting report and recommendation by* Smith, M.J.) (citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must "reach an independent judgment concerning the true extent of the alleged pain and the degree to which it hampers the claimant's ability to engage in substantial gainful activity."  *Sweatman*, 1998 WL 59461, at *5.

When such testimony is consistent with and supported by objective clinical evidence demonstrating that claimant has a medical impairment that one could reasonably anticipate would produce such pain, it is entitled to considerable weight.[16]  20 C.F.R. §§ 404.1529(a), 416.929(a); *Barnett*, 13 F. Supp. 2d at 316.  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with her claims is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including (1) daily activities; (2) location, duration, frequency and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other

---

[16]    In the Act, Congress has specified that a claimant will not be viewed as disabled unless she supplies medical or other evidence establishing the existence of a medical impairment that would reasonably be expected to produce the pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

treatment received; and (6) other measures taken to relieve symptoms.

20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering a claimant's subjective testimony, the objective

medical evidence, and any other factors deemed relevant, the ALJ may

accept or reject the testimony offered.  20 C.F.R. §§ 404.1529(c)(4),

416.929(c)(4); *Martone*, 70 F. Supp. 2d at 151.  If such testimony is

rejected, however, the ALJ must explicitly state the basis for doing so with

sufficient particularity to enable a reviewing court to determine whether

those reasons for disbelief were legitimate, and whether the

determination is supported by substantial evidence.  *Martone*, 70 F.

Supp. 2d at 151 (citing *Brandon v. Bowen,* 666 F. Supp. 604, 608

(S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial

evidence, the decision to discount subjective testimony may not be

disturbed on court review.  *Aponte v. Sec'y, Dep't of Health & Human

Servs.,* 728 F.2d 588, 591 (2d Cir. 1984).

In this case, the ALJ's decision contains no indication that he

considered the required factors, nor does it provide any meaningful

explanation concerning his rejection of claimant's subjective complaints.

Accordingly I recommend a finding that the ALJ's RFC finding is neither

supported by substantial evidence nor properly explained, and that the matter should therefore be remanded to the agency for further consideration.

      D.    <u>Scope of Remand</u>

Having recommended that the Commissioner's decision in this case be vacated, the question remains as to the scope of the remand to the agency.  In cases where the court is able to say, based upon the record before the agency, that the proof of disability is persuasive and further development of the record would not serve any useful purpose, the matter may appropriately be remanded with a directed finding of disability, solely for the purpose of calculating benefits.  *Steficek v. Barnhart*, 462 F. Supp. 2d 415, 418 (W.D.N.Y. 2006) (quoting *Rosa v. Callahan*, 168 F.3d 72,  83 (2d Cir. 1999)).  Remand for further consideration, on the other hand, is justified when the ALJ has applied an improper legal standard, or further findings and explanations would clarify the ALJ's decision.  *Rosa,* 168 F.3d at 82-83; *Parker v. Harris,* 626 F.2d 225, 235 (2d Cir. 1980); *Steficek*, 462 F. Supp. 2d at 418 (citing *Pratts v. Chater,* 94 F.3d 34, 39 (2d Cir. 1996)).

In this instance, the proof regarding disability is far from

overwhelming, and the errors perceived relate more to the ALJ's failure to sufficiently explain his determination to allow the court to conclude that he considered the relevant factors under the regulations, and that his conclusions draw support from substantial evidence in the record. Remand is therefore required in this case for the purpose of making further findings and offering additional explanations of the evidence, and not because of a finding that there is persuasive proof of disability in the existing record.

IV.   SUMMARY AND RECOMMENDATION

It is clear from the record that, during the latter portion of her lifetime, the claimant in this matter, who is now deceased, suffered from the effects of a well chronicled and longstanding mental condition causing her depression and anxiety, and potentially interfering with her ability to perform work-related functions.  While the record now before the court does not definitively establish her inability to perform the required functions of any available jobs in the national and local economy, it does contain evidence suggesting that her mental condition had the potential to seriously affect her ability to perform work-related functions.  As a result, and because of the ALJ's failure to explain in detail his analysis

concerning the claimant's RFC or his determination regarding her credibility, it is respectfully,

RECOMMENDED that plaintiff's motion for judgment on the pleadings in this action be GRANTED, the Commissioner's determination of no disability VACATED, and the matter REMANDED to the agency for further consideration in light of the foregoing.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:     February 27, 2013
           Syracuse, New York

David E. Peebles
U.S. Magistrate Judge